**FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

In re:                 )     Case No. 20-25090-B-11
                     )
NIR WEST COAST, INC., dba     )     DC No. WTC-10
NORTHERN CALIFORNIA ROOFING,   )
                     )
                     )
           Debtor(s).   )
_____ )

**OPINION**

Julie Oelsner, Weintraub Tobin Chediak Coleman Grodin Law
Corporation, Sacramento, California, for Debtor.

Gabriel P. Herrera, Kronick, Moskovitz, Tiedemann & Girard,
Sacramento, California, for creditor Bank of the West.

Christopher D. Jaime, Bankruptcy Judge:

**I.**
**Introduction**

     The message of this Opinion is twofold. First, when employment
violates 11 U.S.C. § 327(a), the bankruptcy court may invoke 11 U.S.C.
§ 328(c) to deny all compensation and the reimbursement of all
expenses. Second, the bankruptcy court has inherent authority to deny
all compensation and the reimbursement of all expenses under Bankruptcy
Rule 2014(a) for nondisclosure or when disclosure is delayed or less
than complete. Invoking these provisions of the Bankruptcy Code and
Bankruptcy Rules, the court in this case denies attorney's fees in the
amount of $76,639.00 and reimbursement of expenses in the amount of
$1,842.92.



FILED

APR - 5 2022

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

## II.
## <u>Jurisdiction and Venue</u>

The court has jurisdiction over this proceeding under 28 U.S.C. § 1334(b) and exclusive jurisdiction over the Initial and Revised Applications under 28 U.S.C. § 1334(e)(2). This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (O). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## III.
## <u>Compensation and Reimbursement of Expenses Requested</u>

Before the court is a *First Interim Application for Compensation and Reimbursement of Expenses to Counsel for Debtor and Debtor in Possession* ("Initial Application") as revised by the *Revised First Interim Application for Compensation and Reimbursement of Expenses to Counsel for Debtor and Debtor in Possession* ("Revised Application") filed by Weintraub Tobin Chediak Coleman Grodin Law Corporation ("Law Firm").[1]

The Initial Application requests attorney's fees in the amount of $111,639.00 and reimbursement of expenses in the amount of $1,842.92 for a total of $113,481.92. See Docket 363 at 9:23-10:13. The Revised Application includes a $35,000.00 reduction and requests attorney's fees in the amount of $76,639.00 and reimbursement of expenses in the amount of $1,842.92 for a

---

[1]The captions of the Interim and Revised Applications are somewhat misleading. Debtor NIR West Coast, Inc., dba Northern California Roofing ("Debtor") was removed as the debtor in possession on April 1, 2021, at which time the subchapter v trustee assumed powers under 11 U.S.C. § 1183(b)(5) and expanded powers under 11 U.S.C. § 1183(b)(2). See Docket 181.

reduced total of $78,481.92.[2]  See Docket 368 at 10:1-21.  The

service period is from November 4, 2020, to November 24, 2021.[3]

The problem is that the Law Firm represented an interest

adverse to the interest of the bankruptcy estate during the term

of its employment as the Debtor's general bankruptcy counsel.

The connection giving rise to the adverse interest was known when

the Debtor filed its application to employ the Law Firm.  The

connection was not initially disclosed and it was not promptly

disclosed after it was raised by a creditor and the subchapter v

trustee during the course of the bankruptcy case.  These

circumstances are unacceptable and they warrant invocation of 11

U.S.C. § 328(c) and Federal Rule of Bankruptcy Procedure 2014(a)

to deny all compensation and reimbursement of all expenses

requested on a final basis.

The Law Firm also appears to request compensation and

reimbursement of expenses for services it provided after the

---

[2]The reason for the $35,000.00 reduction in the Revised
Application is not explained other than to state it is a
voluntary reduction to avoid objections by the United States and
subchapter v trustees.  See Docket 368 at 9:23-27.

[3]The dates of service appear to be incorrectly stated in the
Initial and Revised Applications.  The period is stated in the
Initial Application as "November 4, *2019*, through November 24,
2021."  Docket 363 at 4:14 (emphasis added).  The period is
similarly stated in the Revised Application as "November 4, *2019*,
through November 24, 2021[.]"  Docket 369 at 4:13, 11:20
(emphasis added).  The chapter 11 petition was filed on November
4, 2020.  See Docket 1.  The court therefore presumes that the
compensation and reimbursement period begins on November 4, 2020,
and not November 4, 2019.  See Docket 370 at 2:5 (identifying the
"Application Period" as November 4, 2020, to November 24, 2021).
Billing statements submitted as exhibits also have a start date
of November 4, 2020.  See Dockets 366, 369.

- 3 -

Debtor was removed as the debtor in possession and before its employment was approved.  The request for the former will be independently denied under Lamie v. United States Trustee, 540 U.S. 526 (2004), and In re Johnson, 397 B.R. 486 (Bankr. E.D. Cal. 2008).  The request for the latter will be independently denied under In re Miller, 620 B.R. 637 (Bankr. E.D. Cal. 2020).

**IV.**
**Statement of Relevant Facts**

The Debtor filed a subchapter v chapter 11 petition on November 4, 2020.  See Docket 1.

Gregory T. Lynn ("Mr. Lynn") is the Debtor's sole shareholder.  Id.

Mr. Lynn is identified in the schedules as a co-debtor with and guarantor of the Debtor, a recipient of preferential transfers, and a creditor in the bankruptcy case.  See Docket 33 at Schs. E/F, G; Docket 34 at Nos. 4, 30; Docket 89 at 2:16-17.

Mr. Lynn and the Debtor are also co-defendants in a prepetition state court class action case filed by the Debtor's employees to recover wages and other benefits captioned Javier Vega Tovar, et al. v. NIR West Coast, Inc., Gregory T. Lynn, Case No. MSC17-10600 ("Tovar Litigation").  See Docket 61 at 2:2-3:3.  The Tovar Litigation resulted in a $485,000.00 settlement agreement on which both Mr. Lynn and the Debtor are liable, and which the state court approved on a final basis on November 3, 2020 (the "Tovar Claim").  Id.; see also Docket 63 at 2:12-16; Docket 64 at Ex. 1.  The Tovar Litigation plaintiffs filed a

$410,000.00 proof of claim, Claim No. 16-1, on January 8, 2021.

Meanwhile, on December 4, 2020, the Debtor, in its capacity as the debtor in possession, filed an application to employ the Law Firm as its general bankruptcy attorneys. See Docket 56. The employment application and its supporting declaration identify the Law Firm's attorneys responsible for providing services related to the bankruptcy case as, among others, Julie E. Oelsner ("Ms. Oelsner") and Lukas Clary ("Mr. Clary").[4] See Docket 56 at 4:20-25; Docket 57 at 4:5-7.

The employment application states that, except as disclosed in the supporting declaration, the Law Firm "does not have any connections . . . that would preclude employment" and that it also "does not now hold or represent any interest materially adverse to the interests of the estate[.]" Docket 56 at ¶ 4:12-15. These assertions are repeated in the supporting declaration. See Docket 57 at 3:2-8.

To reinforce that the Law Firm is disinterested and that it does not hold or represent any interest adverse to the interest of the estate for purposes of its employment, the supporting declaration also states that Ms. Oelsner "reviewed the Debtor in Possession's list of creditors, and [] made reasonable inquiries of [the Law Firm's] attorneys and staff to determine the nature of . . . connections." Id. at 3:16-20. The supporting

---

[4]Ms. Oelsner and Mr. Clary are identified in billing statements as, respectively, "JEO" and "LC." See Dockets 366, 369. They are also the only individuals in the employment application with these initials. See Docket 56 at 4:25.

declaration further states that the Law Firm's "staff has also performed a computerized conflict check of all the creditors and parties in interest in this case [and that Ms. Oelsner] reviewed the result of that computerized conflict check, and to the best of [her] knowledge neither [she] nor any other attorneys or employees of [the Law Firm] have any business or social connections with the Debtor in Possession, its creditors, their equity security holders, [] with any other parties in interest [or] their respective attorneys[.]" Id. at 3:22-26.

An order approving the employment application and employing the Law Firm as attorneys for the Debtor as the debtor in possession was entered on December 7, 2020. See Docket 60.

Less than two months after the court approved the Law Firm's employment, during a telephone conversation between Ms. Oelsner and an attorney for the Debtor's primary secured lender on February 1, 2021, Ms. Oelsner apparently referred to Mr. Lynn as a "client" of the Law Firm.[5] See Docket 269 at 6:6-8. The lender's attorney confirmed the telephone conversation and the reference to Mr. Lynn as the Law Firm's "client" in an email two days later on February 3, 2021.[6] See Docket 269 at 6:8-9; see also Docket 271 at Ex. S. A little more than a week later, on February 12, 2021, the subchapter v trustee advised Ms. Oelsner that the Law Firm's simultaneous representation of Mr. Lynn and

---

[5]The call appears in the Law Firm's billing statements. See Dockets 366 & 369, Invoice No. 98408630.

[6]The email appears in the Law Firm's billing statements. See Dockets 366 & 369, Invoice No. 98408630.

the Debtor as the debtor in possession should be disclosed.[7]  See
Docket 269 at 6:16-19.  Ms. Oelsner waited some six months after
the February 2021 conversations with the lender's attorney and
the subchapter v trustee before she disclosed that the Law Firm
represented Mr. Lynn and the Debtor as the debtor in possession,
and that it represented both clients with regard to the Tovar
Litigation and the Tovar Claim.

In a supplemental declaration filed on August 11, 2021, Ms.
Oelsner confirmed that "[the Law Firm] has represented Gregory
Lynn, the Debtor's sole shareholder, in the state court
litigation with the TOVAR class action claimants."  Docket 262 at
2:4-5.  The declaration goes on to state that "[u]pon further
consultation with [a] colleague, Lukas Clary (counsel for the
defendants in the TOVAR litigation), [the Law Firm] substituted
in as counsel for both [the Debtor] and Mr. Lynn in February
2019[.]"[8]  Id. at 2:9-11.  The declaration also states that Ms.
Oelsner learned that the Law Firm represented Mr. Lynn
individually and with regard to the Tovar Litigation, and thus
the Tovar Claim, "during the last two days."  Id. at 2:3; see
also Id. at 2:15-16 ("Until this representation was brought to my
attention . . . two days ago, I was not aware that [the Law Firm]
represented Mr. Lynn in the Tovar matter.").  And it notes that

---

[7]A conference call appears in the Law Firm's billing
statements.  See Dockets 366 & 369, Invoice No. 98408630.

[8]The lender also confirmed that the Law Firm represented Mr.
Lynn in the Tovar Litigation and, thus, with regard to the Tovar
Claim as early as 2019.  See Docket 269 at 6:10-15; Docket 271 at
Ex. T.

- 7 -

the Law Firm continued to represent Mr. Lynn and the Debtor in the Tovar Litigation as of August 11, 2021.  Id. at 2:13-14.

Ms. Oelsner's sworn statements that she first learned that the Law Firm represented Mr. Lynn with regard to the Tovar Litigation and the Tovar Claim "two days" before the date of her August 11, 2021, supplemental declaration are not credible.  Ms. Oelsner's February 2021 reference to Mr. Lynn as a "client" suggests-and the Law Firm's billing statements reflect-otherwise.

On November 4, 2020, Mr. Clary "strategize[d] re [a] potential motion to approve [the Law F]irm as bankruptcy counsel[.]"  Dockets 366 & 369, Invoice #98403073 dated December 10, 2020.  A few weeks later, on December 1, 2020, he "prepare[d] a portion of [the] motion for appointment of counsel" and had "internal discussions re same[.]"  Id., Invoice #98408630 dated April 2, 2021.

On November 5, 2020, Ms. Oelsner and Mr. Clary had "internal discussions" and exchanged emails regarding the effect of the automatic stay on the Tovar Litigation.  Id., Invoice #98403073 dated December 10, 2020.

On December 9, 2020, Mr. Clary "analyze[d]" a motion in which the Tovar Litigation plaintiffs sought a "comfort order" to pursue Mr. Lynn on the Tovar Claim without fear of violating the automatic stay in the Debtor's bankruptcy case and had "internal discussions re status of class action litigation and response to

- 8 -

Tovar's motion[.]"[9]  Id., Invoice #98408630 dated April 2, 2021.
On the same date, Ms. Oelsner also "[r]eviewed [the] Tovar motion
for comfort order" and "email[ed] [] Lukus Clary regarding status
of state court proceeding[.]  Id.  "Internal correspondence re
status of Tovar matter to support response to motion in
bankruptcy court" by Mr. Clary followed on December 21, 2020.
Id.

    On December 17, 2020, Mr. Clary "analyze[d]" a Tovar Claim-
related demand letter that Ms. Oelsner "[r]eviewe[d] and
edit[d]."  Id.  Ms. Oelsner apparently exchanged emails with Mr.
Clary regarding the matter on December 30, 2021.  Id.

    Of particular note and concern, on March 18, 2021, Ms.
Oelsner and Mr. Clary participated in a conference call with
others "regarding plan issues."  Id.  Mr. Clary recorded an entry
on the same date as a "[m]eeting with Greg and bankruptcy
attorneys to strategize re next steps."  Id.  The conference call
and meeting must be viewed in the context of a chapter 11 plan
subsequently filed on May 21, 2021, and a first amended chapter

_____

[9]On December 8, 2020, the Tovar Litigation plaintiffs moved
for a "comfort order" so that they could pursue the Tovar Claim
against Mr. Lynn without fear of violating the automatic stay.
See Dockets 61-64.  The Debtor vigorously opposed the motion on
December 21, 2020, see Dockets 79-81, and the motion was denied
on January 4, 2021.  See Docket 89.  The Tovar Litigation
plaintiffs filed the motion because the state court declined to
proceed against Mr. Lynn and enter judgment against him based on
a default under the settlement agreement in the absence of an
order confirming that there was no automatic stay in effect as to
Mr. Lynn.  See Docket 63 at 2:22-26.  The successful opposition
effectively insulated Mr. Lynn from liability on the Tovar Claim
which left the burden of the claim entirely on the estate.

- 9 -

1  11 plan filed on July 7, 2021.  Both chapter 11 plans included

2  third-party releases that effectively discharged Mr. Lynn and

3  released him from liability on all claims on which he and the

4  Debtor are co-liable, the Tovar Claim included.[10]  See,

5  respectively, Docket 213 at 22:3-5 and Docket 234 at 23:10-20.

6

7  **V.**

8  **Analysis**

9  A.    Representation of an Adverse Interest

10  Section 327(a) limits the employment of attorneys by a

11  debtor serving as the debtor in possession to those (1) who do

12  not hold or represent an interest adverse to the interest of the

13  estate and (2) who are disinterested.[11]  See 11 U.S.C. § 327(a).

14  Section 328(c) permits the bankruptcy court to deny

15  compensation and reimbursement of expenses to attorneys employed

16

17  _____

      [10]The third-party releases were removed, see Dockets 277,
18  278, and 280, but only after the Tovar Litigation plaintiffs
    objected, see Docket 250, and the lender raised the specter of an
19  actual conflict of interest.  See Docket 268 at 9:11-10:17.

20  [11]Section 327(a) states as follows:

21  Except as otherwise provided in this section, the
    trustee, with the court's approval, may employ one or
22  more attorneys, accountants, appraisers, auctioneers,
    or other professional persons, that do not hold or
23  represent an interest adverse to the estate, and that
    are disinterested persons, to represent or assist the
24  trustee in carrying out the trustee's duties under this
    title.
25

26  11 U.S.C. § 327(a).  A debtor in possession is the functional
27  equivalent of a trustee for purposes of employing attorneys under
    § 327.  See Baker Botts L.L.P. v. ASARCO LLC, 576 U.S. 121, 124 &
28  n.1 (2015).

- 10 -

under § 327(a) if, *at any time during the attorneys' employment*, the attorneys represent or hold an interest adverse to the interest of the estate with respect to the matter on which the attorneys are employed.[12]  <u>See</u> 11 U.S.C. § 328(c).  Section 328(c) further permits the bankruptcy court to deny *all* compensation and reimbursement of *all* expenses.  <u>Security Pacific Bank Washington v. Steinberg (In re Westwood Shake & Shingle, Inc.)</u>, 971 F.2d 387, 390 (9th Cir. 1992) ("The bankruptcy court may also waive [counsel's] fees under 11 U.S.C. § 328(c) if [counsel's] representation of the trustee does not comply with section 327(a).").  As explained in <u>Adorno & Yoss LLP v. United States Trustee (In re 3DFX Interactive, Inc.)</u>, 2008 WL 8448326 (9th Cir. BAP Feb. 6, 2008):

> The stakes in the 'adverse interest' calculus are high because the representation of an 'interest adverse to the interest of the estate' with respect to the matter on which the professional is employed that occurs 'at any time during such professional person's employment under section 327 or 1103 of [Title 11]' may lead to denial of *all* compensation for services and reimbursement of expenses.  11 U.S.C. § 328(c).

---

[12]Section 328(c) states as follows:

Except as provided in section 327(c), 327(e), or 1107(b) of this title, the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

11 U.S.C. § 328(c).

- 11 -

1  Id. at *4 (emphasis in original).

2  An actual conflict of interest is the representation of an

3  adverse interest.  See Andrew v. Coopersmith (In re Downtown

4  Invs. Club III), 89 B.R. 59, 64 (9th Cir. BAP 1988).  As such, it

5  is remedied under § 328(c).[13]  Hixon v. Poppin & Shier, 894 F.2d

6  409, 1990 WL 4866 at *2 (9th Cir. Jan. 24, 1990) (citing § 328(c)

7  and stating that a conflict of interest by a chapter 11 debtor's

8  attorney employed under § 327(a) "would clearly warrant a total

9  forfeiture of all fees."); In re Sundance Self Storage-El Dorado

10 LP, 482 B.R. 613, 625 (Bankr. E.D. Cal. 2012) ("Essentially, §

11 328(c) operates as a 'penalty' for a professional's failure to

12 avoid a disqualifying conflict of interest.").  The Law Firm

13 represented the Debtor as the debtor in possession under an

14 actual conflict of interest during the term of its employment.

15 The opposition to the "comfort order" motion pitted Mr.

16 Lynn's interest directly against the estate's interest with

17 regard to liability on the Tovar Claim.  It effectively required

18 the Law Firm to divide its loyalty between two clients by

19 choosing which client it should prefer at the expense of the

20 other:  Oppose the motion and benefit Mr. Lynn at the estate's

21

22

23  [13]This is, of course, nothing new.  The Ninth Circuit
    recognized in Sanchez v. Gordon (In re Sanchez), 241 F.3d 1148
24  (9th Cir. 2001), that "[a]n actual conflict of interest can
    justify a complete denial of compensation."  Id. at 1151.  And as
25  the United States Supreme Court stated over 80 years ago in the
    context of a reorganization case under the Bankruptcy Act,
26  "[w]here an actual conflict of interest exists, no more need be
    shown in this type of case to support a denial of compensation."
27  Woods v. City Nat. Bank & Trust Co. of Chicago, 312 U.S. 262, 268
    (1941).
28

- 12 -

expense by precluding the state court from proceeding against him and leaving the Debtor liable for the Tovar Claim or ignore the motion and benefit the estate at Mr. Lynn's expense by exposing him to an adverse judgment and collection on the Tovar Claim.

Same with regard to the chapter 11 plan discussions between Ms. Oelsner, Mr. Clary, and others. What was said during the discussions is not known. But what is known is that two chapter 11 plans which burdened the estate with liability for the Tovar Claim through third-party releases beneficial to Mr. Lynn emerged and were filed shortly after the discussions took place. The plans were not confirmed and the release provisions were ultimately removed. But that is irrelevant. It is enough that the Law Firm's attorneys who represented Mr. Lynn in the Tovar Litigation and the Debtor as the debtor in possession discussed chapter 11 plan provisions and then divided loyalty as between the two clients with regard to liability on the Tovar Claim. In this regard, reference is made to <u>Woods</u>, <u>supra</u>, where the United States Supreme Court stated:

> Furthermore, the incidence of a particular conflict of interest can seldom be measured with any degree of certainty. The bankruptcy court need not speculate as to whether the result of the conflict was to delay action where speed was essential, to close the record of past transactions where publicity and investigation were needed, to compromise claims by inattention where vigilant assertion was necessary, or otherwise to dilute the undivided loyalty owed to those whom the claimant purported to represent.

<u>Woods</u>, 312 U.S. at 268.

Also noteworthy is that an adverse interest has been defined to mean (1) possession or assertion of an economic interest that

- 13 -

would tend to lessen the value of the bankruptcy estate, (2) possession or assertion of an economic interest that would create either an actual or potential dispute in which the estate is the rival claimant, or (3) possession of a predisposition under circumstances that create a bias against the estate.  Dye v. Brown (In re AFI Holding, Inc.), 530 F.3d 832, 845 (9th Cir. 2008).

To the extent the opposition to the "comfort order" motion effectively prevented the Tovar Litigation plaintiffs from pursuing Mr. Lynn in state court it was the assertion of an economic interest that tended to lessen the value of the estate by leaving the Debtor solely liable on the Tovar Claim.  The opposition also made Mr. Lynn and the estate economic rivals insofar as it pitted Mr. Lynn's liability on the Tovar Claim against the estate's.  And the opposition represented a bias against the estate and in favor of Mr. Lynn as it reflected a preference that the Debtor and not Mr. Lynn bear liability for the Tovar Claim.  Because in each of these instances the Law Firm represented Mr. Lynn in the Tovar Litigation while also representing the Debtor as the debtor in possession, the Law Firm represented a party who held an interest adverse to the estate and thus represented an interest adverse to the interest of the estate.  Tevis v. Wilke, Fleury, Hoffelt, Gould & Birney, LLP (In re Tevis), 347 B.R. 679, 688 (9th Cir. BAP 2006); In re Kobra Properties, 406 B.R. 396, 403 (Bankr. E.D. Cal. 2009).

In light of the foregoing, the court has no difficulty

- 14 -

concluding that the Law Firm represented an interest adverse to

the interest of the estate which includes representation of the

estate under an actual conflict of interest.  With regard to the

latter, no more need be shown.  The court will therefore exercise

its discretion under § 328(c) and deny the allowance of all

compensation and the reimbursement of all expenses requested in

the Revised Application in the amounts of $76,639.00 and

$1,842.92, respectively, on a final basis.

B.    Non-Disclosure of Connections

Federal Rule of Bankruptcy Procedure 2014 provides an

equally powerful tool to remedy nondisclosure or the incomplete

disclosure of connections that give rise to an adverse interest

discovered during a bankruptcy case.  Bankruptcy Rule 2014(a)

states that an employment application filed under § 327 shall be

accompanied by a verified statement of the person to be employed

setting forth the person's connections with the debtor,

creditors, or any other party in interest.[14]  See Fed. R. Bankr.

---

[14]Bankruptcy Rule 2014(a) states as follows:

An order approving the employment of attorneys,
accountants, appraisers, auctioneers, agents, or other
professionals pursuant to § 327, § 1103, or § 1114 of
the Code shall be made only on application of the
trustee or committee.  The application shall be filed
and, unless the case is a chapter 9 municipality case,
a copy of the application shall be transmitted by the
applicant to the United States trustee.  The
application shall state the specific facts showing the
necessity for the employment, the name of the person to
be employed, the reasons for the selection, the
professional services to be rendered, any proposed
arrangement for compensation, and, to the best of the
applicant's knowledge, all of the person's connections

- 15 -

P. 2014(a).

The disclosure requirements of Bankruptcy Rule 2014(a) are strictly applied with the burden on the applicant to come forward and make full, candid, and complete disclosure of all connections with the debtor, debtor in possession, insiders, creditors, and parties in interest regardless of how old or trivial the connections may be. Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park-Helena Corp.), 63 F.3d 877, 881-82 (9th Cir. 1995). "It is the bankruptcy court that determines whether a professional's connections render him or her unemployable under § 327(a)— not the other way around." Sundance Self-Storage, 482 B.R. at 631.

Disclosure is also an ongoing obligation, and it must be discharged promptly when circumstances change or otherwise warrant.[15] I.G. Petroleum L.L.C. v. Fenasci (In re West Delta Oil Co., Inc.), 432 F.3d 347, 355 (5th Cir. 2005) ("Case law has

---

with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).

[15]The Law Firm concedes this point: "[The Law Firm] recognizes that duty to disclose connections pursuant to Bankruptcy Rule 2014 is a continuing obligation." Docket 56 at 6:35; Docket 57 at 5:14-15.

uniformly held that under Rule 2014(a), (1) full disclosure is a continuing responsibility, and (2) an attorney is under a duty to promptly notify the court if any potential for conflict arises."); Warner v. Pease (In re Bay Voltex Corp.), 2008 WL 8444794 at *8 (9th Cir. BAP Oct. 9, 2008) ("Rule 2014 has been interpreted to impose an ongoing duty to update information as circumstances change."); Kobra Properties, 406 B.R. at 402 ("The duty to disclose is a continuing obligation[.]").

The bankruptcy court has "inherent" authority to remedy nondisclosure or disclosure that is less than complete. Law Offices of Nicholas A. Franke v. Tiffany (In re Lewis), 113 F.3d 1040, 1045 (9th Cir. 1997). This includes the discretion to deny all compensation and expenses.[16] Sundance Self Storage, 482 B.R. at 631 ("If the bankruptcy court discovers that a professional holds an undisclosed adverse interest, the court has the power to deny all compensation and reimbursement of expenses."); Kobra Properties, 406 B.R. at 402 ("Disclosure that later turns out to be incomplete can be remedied by denial of fees."). Indeed, the well-known law in the Ninth Circuit is that "[e]ven a negligent

---

[16]Again, this is nothing new. The Ninth Circuit has long-recognized the bankruptcy court's discretionary authority to deny compensation when connections are not disclosed in the context of employment as the estate's general bankruptcy counsel. See In re Haldeman Pipe & Supply Co., 417 F.2d 1302, 1305 (9th Cir. 1969) (connections not disclosed as required by General Order 44 in chapter XI case under the Bankruptcy Act); First Interstate Bank of Nevada, N.A. v. CIC Inv. Corp. (In re CIC Inv. Corp.), 192 B.R. 549, 552 (9th Cir. BAP 1996) (finding Haldeman instructive because the Bankruptcy Code like the Bankruptcy Act uses "may" in stating that compensation may be denied to a professional with an interest adverse to the estate).

or inadvertent failure to disclose fully relevant information may result in a denial of all requested fees." Park-Helena, 63 F.3d at 881.

The Law Firm had no business securing employment as attorneys for the Debtor in its capacity as the debtor in possession without disclosing its connection to Mr. Lynn, generally, and, specifically, its representation of Mr. Lynn in the Tovar Litigation. At a minimum, Mr. Clary knew of the connection when the employment application was filed. His representation of Mr. Lynn in the Tovar Litigation was ongoing at the time and he was intimately involved securing the Law Firm's employment under § 327(a). As an attorney identified as estate counsel in the employment application, the burden was on Mr. Clary to ensure that the full extent of his connection to Mr. Lynn through the Law Firm was disclosed. That did not happen.

Ms. Oelsner also could-and should-have disclosed the Law Firm's connection to Mr. Lynn early in the bankruptcy case. She knew of Mr. Lynn's connection to the Law Firm substantially more than the "two days" before the August 11, 2021, date of her supplemental declaration. At a minimum, she knew of the connection in February 2021 when she referred to Mr. Lynn as the Law Firm's "client." That reference triggered an obligation to disclose the connection immediately and not wait six months after being advised to do so by the subchapter v trustee.

The number and substance of communications and contact between Ms. Oelsner and Mr. Clary reflected in the Law Firm's

- 18 -

billing statements strongly suggest that Ms. Oelsner may have known the extent of Mr. Lynn's connection to the Law Firm well before February 2021. That, of course, would have triggered an even earlier disclosure obligation. Between the time the chapter 11 petition and the employment application were filed, Ms. Oelsner communicated with Mr. Clary and worked directly with him on matters in the bankruptcy case where Mr. Lynn's and the estate's liability in the Tovar Litigation and on the Tovar Claim intersected and overlapped. Communication and contact between Ms. Oelsner and Mr. Clary on those same matters continued well after the employment application was filed and approved. It is difficult to believe that there was no mention of the Law Firm's role in the Tovar Litigation on behalf of Mr. Lynn during this extensive interaction.

In any case, the Law Firm's representation of Mr. Lynn, and particularly its representation of Mr. Lynn with regard to the Tovar Litigation and thence the Tovar Claim, is a connection that was known and not disclosed when the employment application was filed. The connection was also not disclosed promptly after it was raised early in the case by a creditor and the subchapter v trustee. Again, under these circumstances, the court has little difficulty exercising its discretionary authority to deny, on this alternative basis, the allowance of all compensation and the reimbursement of all expenses requested in the Revised Application in the amounts of $76,639.00 and $1,842.92, respectively.

- 19 -

C.   Compensation and Reimbursement of Expenses After Removal of the Debtor as the Debtor in Possession

Although the court has denied all compensation and reimbursement of all expenses, to the extent both are included in the Revised Application, or to the extent they could be requested, compensation and reimbursement of expenses for services the Law Firm provided after the Debtor was removed as a debtor in possession will be denied under Lamie, 540 U.S. 526, and Johnson 397 B.R. 486.  This period runs from April 1, 2021, through November 24, 2021.  It includes the following attorney's fees and expenses:

**Lamie Period (4/1/21 - 11/24/21)**

| Matter | Fees | | Expenses | |
|--------|------|---|----------|---|
| Chapter 11 | $ | 21,452.50 | $ | 218.38 |
| SRS/General | $ | 208.00 | $ | - |
| Syntrol | $ | 1,572.50 | $ | 188.88 |
| Vacaville QR | $ | - | $ | - |
| Tovar | $ | 340.00 | $ | 188.00 |
| **Lamie Totals** | **$** | **23,573.00** | **$** | **595.26** |

Compensation and reimbursement of expenses requested for this period are based on the following billing statements:

**Chapter 11 - Lamie**

| Invoice Date | Invoice No. | Fees | | Expenses | |
|--------------|-------------|------|---|----------|---|
| 5/18/2021 | 98411420 | $ | 355.00 | $ | 164.69 |
| 6/7/2021 | 98412321 | $ | 1,790.00 | $ | - |
| 7/7/2021 | 98414239 | $ | 85.00 | $ | - |
| 8/12/2021 | 98416384 | $ | 1,377.50 | $ | 4.80 |
| 12/20/2021 | n/a | $ | 17,845.00 | $ | 48.89 |
| | | $ | 21,452.50 | $ | 218.38 |

**SRS/General - Lamie**

| Invoice Date | Invoice No. | Fees | | Expenses | |
|--------------|-------------|------|---|----------|---|
| 7/9/2021 | 98414454 | $ | 208.00 | $ | - |

- 20 -

**Syntrol - Lamie**

| Invoice Date | Invoice No. | Fees | | Expenses | |
|---|---|---|---|---|---|
| 5/7/2021 | 98410629 | $ | 977.50 | $ | - |
| 6/3/2021 | 98412138 | $ | 170.00 | $ | - |
| 8/6/2021 | 98415882 | $ | 425.00 | $ | 188.88 |
| | | $ | 1,572.50 | $ | 188.88 |

**Vacaville QR- Lamie**

| Invoice Date | Invoice No. | Fees | | Expenses | |
|---|---|---|---|---|---|
| | | $ | - | $ | - |

**Tovar - Lamie**

| Invoice Date | Invoice No. | Fees | | Expenses | |
|---|---|---|---|---|---|
| 5/7/2021 | 98410630 | $ | 42.50 | $ | - |
| 7/9/2021 | 98414455 | $ | - | $ | 94.00 |
| 12/9/2021 | 98423300 | $ | 297.50 | $ | 94.00 |
| | | $ | 340.00 | $ | 188.00 |

In <u>Lamie</u>, the United States Supreme Court held that when a debtor is removed as the debtor possession its attorneys are no longer employed under § 327 and compensation may not be awarded under § 330. <u>Lamie</u> involved removal of the debtor as the debtor in possession and the appointment of a trustee by conversion from chapter 11 to chapter 7. However, that <u>Lamie's</u> "underlying rationale turned on cessation of status as debtor in possession indicates that there is no reason to doubt that <u>Lamie</u> applies equally to chapter 11 cases in which a trustee is appointed." <u>Johnson</u>, 397 B.R. at 490.

Section 1184 is substantively similar to § 1107(a).[17] As

---

[17]Section 1184 states as follows:

Subject to such limitations or conditions as the court may prescribe, a debtor in possession shall have all

- 21 -

noted above, the latter provides the debtor as the debtor in possession-and thence as the functional equivalent of a trustee-with authority to employ attorneys under § 327 and to compensate attorneys from the estate under § 330.  So too must the former. And so just as the removal of the debtor as the debtor in possession in a non-subchapter v chapter 11 case terminates the debtor's authority and status under § 1107(a), removal of the debtor as the debtor in possession in a subchapter v chapter 11 case equally terminates the debtor's authority and status under § 1184.  In other words, <u>Lamie</u> is no less applicable in a subchapter v chapter 11 case.

Termination of the Debtor's status as the debtor in possession on April 1, 2021, terminated the Debtor's retention of

---

the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all functions and duties, except the duties specified in paragraphs (2), (3), and (4) of section 1106(a) of this title, of a trustee serving in a case under this chapter, including operating the business of the debtor.

11 U.S.C. § 1184.

Section 1107(a) states as follows:

Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

11 U.S.C. § 1107(a).

- 22 -

the Law Firm under § 327(a) as the estate's attorneys and the ability to compensate and reimburse the Law Firm from the estate under § 330.  Compensation and reimbursement of expenses for services that the Law Firm provided on and after April 1, 2021, are therefore denied for the independent reasons stated above.

    D.   <u>Pre-Employment Compensation and Expenses</u>

    Again, although the court has denied all compensation and reimbursement of all expenses, to the extent included in the Revised Application or to the extent they are or could ever be requested, compensation and reimbursement of expenses for services that the Law Firm provided before its employment was approved will be denied under <u>Miller</u>, 620 B.R. 637.  This period runs from November 4, 2020, through December 6, 2020.  It includes the following attorney's fees and expenses:

| Matter | Fees | Costs |
|--------|------|-------|
| Chapter 11 | $ 19,210.00 | $ 401.95 |
| SRS/General | $ 369.00 | $ 225.75 |
| Syntrol | $ 841.50 | $ - |
| Vacaville QR | $ 328.00 | $ 131.75 |
| Tovar | $ 1,312.00 | $ 240.96 |
| **Pre-Employment Period Totals** | **$ 22,060.50** | **$ 1,000.41** |

    Compensation and reimbursement of expenses requested for this period are based on the following billing statements:

**Chapter 11 - Pre-Employment**

| Invoice Date | Invoice No. | Fees | Costs |
|--------------|-------------|------|-------|
| 12/10/2020 | 98403073 | $ 17,425.00 | $ 272.98 |
| 4/2/2021 | 98408630 | $ 1,785.00 | $ 128.97 |
| | | $ 19,210.00 | $ 401.95 |

**SRS/General - Pre-Employment**

| Invoice Date | Invoice No. | Fees | Costs |
|--------------|-------------|------|-------|

| 12/8/2021 | 98402783 | $ 369.00 | $ 225.75 |

**Syntrol - Pre-Employment**

| Invoice Date | Invoice No. | Fees | Costs |
| --- | --- | --- | --- |
| 12/8/2020 | 98402781 | $ 804.00 | $ - |
| 12/8/2020 | 98402782 | $ 37.50 | $ - |
| | | $ 841.50 | $ - |

**Vacaville QR - Pre-Employment**

| Invoice Date | Invoice No. | Fees | Costs |
| --- | --- | --- | --- |
| 12/8/2020 | 98402784 | $ 328.00 | $ 131.75 |

**Tovar - Pre-Employment**

| Invoice Date | Invoice No. | Fees | Costs |
| --- | --- | --- | --- |
| 12/8/2020 | 98402780 | $ 1,312.00 | $ 129.96 |
| 1/6/2021 | 98404079 | $ - | $ 77.00 |
| 6/3/2021 | 98412137 | $ - | $ 34.00 |
| | | $ 1,312.00 | $ 240.96 |

The court must distinguish between pre- and post-employment services.  The former requires a showing that is not required by the latter.  Specifically, in addition to meeting the requirements of §§ 327 and 330, compensation for pre-employment services requires a showing of exceptional circumstances, *i.e.*, (i) a satisfactory explanation for the failure to obtain prior judicial approval and (ii) a significant benefit to the estate. Okamoto v. THC Fin. Corp. (In re THC Fin. Corp.), 837 F.2d 389, 392 (9th Cir. 1988); Atkins v. Wain, Samuel & Co., 69 F.3d 970, 973-74 (9th Cir. 1995); see also In re Emco Enterprises, Inc., 94 B.R. 184, 187 (Bankr. E.D. Cal. 1988).  In other words, as this court has explained, whereas *nunc pro tunc* approval of employment under § 327 is not permitted, that does not preclude compensation under § 330 for pre-employment services upon a showing of exceptional circumstances.  Miller, 620 B.R. at 641-43.

- 24 -

The Initial and Revised Applications do not include a showing of the exceptional circumstances required for the court to award compensation for pre-employment services, even if employment satisfied § 327. Compensation and reimbursement of expenses for services the Law Firm provided between November 4, 2020, and December 6, 2020, and thus before its employment was approved, are therefore denied for the independent reasons stated above.

## VI.
## Conclusion

For the foregoing reasons, the Revised Application will not be approved and the compensation and reimbursement of expenses requested will be denied and disallowed.

The Law Firm will also be ordered to transmit any retainer in its possession to the subchapter v trustee within seven days of the date of this Opinion, which the subchapter v trustee shall hold subject to further order of this court.

A separate order will issue.

Dated: April 5, 2022.

UNITED STATES BANKRUPTCY JUDGE

**INSTRUCTIONS TO CLERK OF COURT**
**SERVICE LIST**

The Clerk of Court is instructed to send the attached document, via the BNC, to the following parties:

Julie E. Oelsner
Weintraub Tobin Chediak Coleman Grodin Law Corporation
400 Capitol Mall 11th Fl
Sacramento CA 95814

Gabriel P Herrera
Kronick Moskovitz Tiedemann & Girard
1331 Garden Hwy, 2nd Floor
Sacramento CA 95833

Walter R. Dahl
2304 N St
Sacramento CA 95816-5716

Jason M. Blumberg
501 I St #7-500
Sacramento CA 95814